**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4718

DENNIS RAY GORDON,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.
(CR-96-8-F)

Argued: April 8, 1998

Decided: May 18, 1998

Before WILKINS, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Paul K. Sun, Jr., SMITH, HELMS, MULLISS &
MOORE, L.L.P., Raleigh, North Carolina, for Appellant. Anne Margaret Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United States
Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Dennis Ray Gordon of conspiracy to possess with the intent to distribute crack cocaine in violation of 21 U.S.C.A. § 846 (West 1981 & Supp. 1997), possession with intent to distribute crack cocaine in violation of 21 U.S.C.A. § 841(a)(1) (West 1981), and using or carrying a firearm during a drug trafficking crime in violation of 18 U.S.C.A. § 924(c)(1) (West 1976 & Supp. 1998). The district court sentenced Gordon to 227 months imprisonment -- 167 months on the drug charges and 60 months, to be served consecutively, on the firearms charge. The court also ordered Gordon to pay a fine of $10,675, "due immediately." Gordon appeals, asserting: (1) the government's failure to give him notice of its intent to introduce evidence of his prior bad acts violated Rule 404(b) of the Federal Rules of Evidence and entitles him to a new trial and (2) the district court plainly erred in imposing the fine. Finding no reversible error, we affirm.

I.

On August 18, 1995, the Sheriff's Drug Task Force of Edgecombe County, North Carolina arrested Gordon. According to the testimony of the task force officers, they arranged for a known drug dealer and informant, Kenneth Earl McKenzie, to buy two ounces of crack cocaine from Gordon. McKenzie testified, and the task force officers corroborated, that McKenzie telephoned Gordon from the police station at noon on August 18, 1995, and told Gordon that he wished to purchase two ounces of crack cocaine. The officers then set up three surveillance points around Tom Styth Park, where Gordon and McKenzie agreed to meet. One officer's vehicle, a black Ford Bronco, was parked near McKenzie's vehicle.

After waiting twenty minutes for Gordon to arrive, McKenzie paged Gordon from a nearby pay phone. A woman answered and told

2

McKenzie that Gordon was on his way. As McKenzie was returning to his car, Gordon drove past McKenzie, with his co-defendant, Clive Alexander Grant, in the car. Momentarily, Gordon stopped short; he then noted the Ford Bronco, and drove through the park, dropping Grant at a nearby convenience store. A minute or two later, Gordon came back and pulled up to McKenzie, who was still on foot, and motioned to McKenzie to follow Grant into the convenience store. McKenzie then signaled to the officers, identifying Gordon as the person with whom he had contacted to buy the two ounces of crack.

One task force officer, Curtis Pittman, testified that after receiving the signal from McKenzie, he and another officer approached Gordon and identified themselves. Gordon continued to walk away, at which point the officers apprehended him. Observing a bulge on Gordon's side, the officers asked what Gordon was carrying, to which he responded "a pea shooter." The officers then removed from his waistband a nine millimeter pistol and also confiscated a pager, a pocket knife, and $21.

Two other officers approached Grant who was using a nearby pay phone. The officers told Grant to be still and started to pat him down for weapons. Grant hung up the telephone and broke into a run. Wrestling Grant to the ground, the officers found a fully loaded Ruger nine millimeter pistol in his waistband, two ounces of crack cocaine in his left front pocket, and two pagers.

In addition to describing the drug buy that took place on August 18, 1995, McKenzie also testified as to his prior relationship with Gordon. McKenzie stated that he had first met Gordon in 1993 through a mutual friend named "Dimples," when McKenzie arranged through Dimples to buy a half-ounce of crack from Gordon. McKenzie related that Gordon and Dimples both facilitated the purchase, retrieving the cocaine from a secret spot in Dimples' house and weighing it on a scale. McKenzie maintained that subsequently he had bought crack from Gordon "time and time again."

Based solely on the 1995 attempted sale of crack to McKenzie at Tom Styth Park, the government charged Gordon and Grant with a one-day conspiracy to possess with the intent to distribute crack cocaine, possession with intent to distribute crack cocaine, and pos-

session of a firearm during the commission of a narcotics offense. Following Gordon's conviction on all counts, the district court sentenced Gordon to 167 months on the conspiracy and drug possession charges, and 60 months on the weapons charge to run consecutively. Because Gordon is a Jamaican citizen, the district court also ordered his deportation following incarceration. Finally, pursuant to 18 U.S.C.A. § 3572 (West Supp. 1998) and § 5E1.2 of the United States Sentencing Guidelines, the district court imposed a $10,675 fine on Gordon.

II.

Gordon argues that retrial is warranted because the government failed to provide him with timely notice of its intention to introduce bad act evidence -- namely McKenzie's testimony about his prior drug deals with Gordon -- in violation of Rule 404(b) of the Federal Rules of Evidence. At trial the district court ruled that Rule 404(b) did not apply because this evidence was "intrinsic" to the crimes charged.

We review a district court's evidentiary rulings, including those based on Rule 404(b), for abuse of discretion. See United States v. Mark, 943 F.2d 444, 447 (4th Cir. 1991). Evidence of other bad acts is admissible under Rule 404(b) if it is "probative of a material issue other than character." United States v. Madden, 38 F.3d 747, 753 (4th Cir. 1994) (quoting Huddleston v. United States , 485 U.S. 681, 686 (1988)). Such evidence is properly admitted when it is "(1) relevant to an issue other than character, (2) necessary, and (3) reliable." Mark, 943 F.2d at 447 (internal citations and quotations omitted).

Rule 404(b) applies, however, only to evidence "extrinsic" to the crimes alleged in the indictment. When evidence is"intrinsic," meaning the evidence is so "inextricably intertwined" with the charged crimes that it comprises "a single criminal episode," or the evidence is a "necessary preliminar[y]" to the charged offenses, Rule 404(b) does not apply. United States v. Chin, 83 F.3d 83, 88 (4th Cir. 1996) (internal citations and quotations omitted). In Gordon's case, we need not decide whether evidence of McKenzie's prior drug deals with Gordon is "intrinsic" or "extrinsic" to the charged crimes. Even assuming that this evidence is "extrinsic," as Gordon urges, and thus

4

that Rule 404(b) applies, the error in admitting the evidence would be harmless.

Because Gordon requested that the government "provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial," Fed. R. Evid. 404(b), and the government failed to give such notice with respect to Gordon and McKenzie's prior drug deals, Rule 404(b), if applicable, would mandate that this evidence be excluded at trial. See, e.g., United States v. Lopez-Gutierrez, 83 F.3d 1235, 1241 (10th Cir. 1996); see also Fed. R. Evid. 404(b) advisory committee's notes ("[b]ecause the notice requirement serves as condition precedent to admissibility of 404(b) evidence, the offered evidence is inadmissible if . . . the notice requirement has not been met").

We will not order a new trial based on a violation of Rule 404(b)'s notice provision, however, if the error is harmless. See United States v. Loayza, 107 F.3d 257, 263 (4th Cir. 1997). If an appellate court can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgement was not substantially swayed by the error," it must affirm. United States v. Nyman, 649 F.2d 208, 211-12 (4th Cir. 1980) (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)).

Here, any error was indeed harmless. McKenzie's testimony about his prior drug dealing with Gordon was brief and overwhelmed by the evidence against Gordon on the crimes charged, i.e. conspiracy to possess crack, possession of crack with intent to distribute, and possession of a firearm during a drug offense. McKenzie testified that he placed a call to Gordon to purchase two ounces of crack, arranged with Gordon that the exchange would take place in Tom Styth Park, met Gordon in the park, was instructed by Gordon to go into the convenience store where Grant was waiting with the two ounces of crack, and signaled to the officers that Gordon was the person from whom he ordered the crack. In addition, the officers testified to apprehending Gordon and Grant, both of whom were armed, with Grant in possession of two ounces of crack. The officers further related that while transporting Gordon to the magistrate's office, Gordon initially denied knowing Grant at all, and then admitted that he had been traveling with another individual whom both the officers identified as

5

Grant. Considering the overwhelming evidence demonstrating Gordon's guilt and the minor, arguably improper evidence, we can only conclude "with fair assurance" that the jury could not have been "substantially swayed" by the assertedly improper evidence. Nyman, 649 F.2d at 211-12.

We also note that Gordon's claims of unfair surprise resulting from the government's failure to provide notice ring hollow. Gordon admitted at oral argument that at the time of the trial, he knew McKenzie would be testifying against him. Gordon also conceded that when McKenzie first testified, Gordon could have requested a continuance to give him the opportunity to investigate possible exculpatory evidence regarding this testimony. Gordon, however, did nothing of the sort. We are thus unpersuaded that Gordon suffered any unfair surprise by McKenzie's testimony.

III.

Gordon also contends that in view of his financial inability to pay a $10,765 fine "immediately," the district court erred in imposing this fine.

Because Gordon failed to object to the fine at sentencing, we examine his claim for plain error. United States v. Castner, 50 F.3d 1267, 1277 (4th Cir. 1995) (challenge to fine reviewed for plain error). We will not upset the district court's imposition of the fine, therefore, unless Gordon proves that it (1) is error, (2)  which is plain, (3) affects his substantial rights, and (4) seriously affects the fairness, integrity or public reputation of judicial proceedings. Id. at 1277-78. There was no error, plain or otherwise, here.

The statute governing the district court's imposition of the fine, 18 U.S.C.A. § 3572(a), provides in relevant part:

> In determining whether to impose a fine, and the amount, time for payment, and method of payment of a fine, the [district] court shall consider . . .
>
> (1) the defendant's income, earning capacity, and financial resources . . . .

6

See also U.S.S.G. § 5E1.2(d)(2). In imposing a fine, a district court must either make explicit factual findings, or adopt the presentence report if it "contains adequate factual findings to allow effective appellate review of the fine." Castner, 50 F.3d at 1277.

Section 5E1.2 of the United States Sentencing Guidelines further states that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a) (emphasis added). The defendant accordingly "bears the burden of demonstrating his present and future inability to pay." United States v. Hyppolite, 65 F.3d 1151, 1159 (4th Cir. 1995).

In this case, the district court adopted the findings in the presentence report, downwardly departed from the minimum allowable fine of $17,500 under § 5E1.2(c)(3) of the Sentencing Guidelines, and imposed on Gordon a $10,567 fine "due immediately." The court waived any interest that would accrue if Gordon failed to pay the fine immediately, finding that "the defendant [was] without the ability to . . . pay interest."

The presentence report contains adequate factual findings to support this sentence. The report notes that, even though Gordon at the time of sentencing was unemployed and had no current income, his personal assets amounted to $5,280. In addition, the report states that Gordon possesses some plumbing and carpentry skills and that Gordon could earn over $7,500 in a Bureau of Prison's employment project. Thus, when combining Gordon's present assets and projected earnings while in prison, the report indicates that Gordon would be able to meet his fine obligation even though he could not pay it immediately. The district court, recognizing that Gordon would have to pay the fine over time, waived any interest otherwise payable under the Guidelines. Gordon failed to introduce evidence to counter that contained in the presentence report and so has not demonstrated, as he is required to do under § 5E1.2(a) of the Sentencing Guidelines, that he cannot pay the fine in this manner. See U.S.S.G. § 5E1.2(a). Accordingly, the district court did not err in imposing the fine.

Gordon's claim that the district court plainly erred because the report based Gordon's ability to pay the fine in part on his earning

7

capacity while on supervised release, which would not be available to him because he faces immediate deportation after incarceration, is meritless. Although Gordon's ability to pay the fine upon release may be compromised due to deportation, the report makes clear that between his personal assets at the time of his incarceration and his earning capacity while in prison, which combined amount to over $12,000, he could easily pay the $10,675 fine before his release. Gordon's impending deportation, therefore, does not affect the soundness of the district court's imposition of the fine.

IV.

For the foregoing reasons, Gordon's convictions and sentences are

AFFIRMED.

8