UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

No. 02-4855

GEORGE HALEY, a/k/a George Scott,
*Defendant-Appellant.*

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

No. 02-4902

JULIUS WILDER,
*Defendant-Appellant.*

Appeals from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CR-02-98)

Submitted: April 29, 2003

Decided: May 23, 2003

Before WIDENER and MICHAEL, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

Mary Lou Newberger, Federal Public Defender, Charleston, West Virginia; Matthew A. Victor, VICTOR, VICTOR & HELGOE, L.L.P., Charleston, West Virginia, for Appellants. Kasey Warner, United States Attorney, Travis N. Gery, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

In No. 02-4855, Appellant George Haley appeals his jury conviction of knowingly using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(2000). Haley previously pled guilty to three counts of drug trafficking charges and proceeded to a jury trial on the firearm count. He received a total sentence of eighty-one months in prison. In No. 02-4902, Appellant Julius Wilder appeals his jury convictions of one count of conspiracy to distribute cocaine, in violation of 18 U.S.C. § 846 (2000), and two counts of aiding and abetting the distribution of cocaine, in violation of 18 U.S.C. § 841(a)(1) (2000). Wilder was sentenced to sixty-three months in prison. Finding no error in either appeal, we affirm.

The prosecutions of Haley and Wilder were the result of an investigation conducted by the West Virginia State Police that centered on controlled purchases of cocaine from Wilder by confidential informant Carl Graybeal. Graybeal entered into a plea agreement in 2000 in which he pled guilty to federal drug charges and agreed to cooperate with law enforcement investigations. Graybeal had been dealing with Wilder since 1998 and considered him his primary source of cocaine. Graybeal purchased quantities of cocaine ranging from one-

half ounce to four ounces at Wilder's residence in West Virginia. Graybeal would telephone Wilder and place his order. Upon Graybeal's arrival at Wilder's residence, Wilder would make a phone call and they would wait for the arrival of a third person. When the third person arrived, they would go to the back of the house, and Wilder would give cocaine to Graybeal.

On February 25, 2002, Graybeal made a recorded phone call to Wilder to arrange a purchase, and they agreed that Graybeal would travel to Wilder's house to purchase cocaine. Graybeal was searched and given $600 of recorded money for the buy; he was kept under constant observation during his travel to Wilder's. Wilder met Graybeal upon his arrival and made a few phone calls; a third person (who was later identified as Haley) arrived, and he and Wilder went to the rear of the residence. Upon his return, Wilder delivered a bag of cocaine to Graybeal, and Graybeal gave him the $600 provided to him and $50 of his own money. Haley then left the residence, as did Graybeal. Graybeal proceeded to another location, where he delivered the purchased cocaine to West Virginia Police Trooper Ballard.

Between the date of this transaction (February 25, 2002) and March 28, 2002, Graybeal made a series of phone calls to Wilder under Officer Ballard's supervision to arrange another, larger cocaine purchase. Wilder agreed to sell Graybeal four ounces of cocaine for $4400 on March 28, 2002. On that day, Graybeal again made a supervised purchase of cocaine.

Wilder was waiting for Graybeal on the front porch when he arrived. There was a red van in the driveway, and as Graybeal approached the house, an individual came from behind the van and followed him into the house. He recognized this person as the same person who came to the February 25 sale. A police officer observing the transaction corroborated this information.

Graybeal sat on a couch while Wilder and Haley went to the rear of the house, and Wilder returned after a few minutes and requested money. Graybeal gave him the $4400, and Wilder returned to the back of the house. After a few minutes, Haley returned from the rear of the house and went outside. Wilder returned with a scale and weighed a bag of cocaine. He asked Graybeal if that was acceptable,

and he replied that it was. After a few more minutes, Haley returned, accompanied Wilder to the rear of the house, and then left.

From the outside, a state trooper observed Haley exit the residence, approach the passenger side of the van, and then return to the house carrying something in his left hand. A few minutes after entering the residence a second time, Haley came out again and entered the passenger side of the van, which then began to depart. Other state troopers who were standing by in a marked police car intercepted the van by pulling into the driveway and blocking it.

As the vehicles were "nose to nose," one of the officers (McCord) observed Haley in the van. The car's headlights enabled McCord to see Haley's upper torso in the van. As McCord exited the police car, he saw Haley stiffen and rotate to his left. McCord also noticed Haley's shoulder moving up and down "as if he was manipulating, grabbing, pulling an object near, around maybe his front pocket, his rear pocket, waistband, that general area." McCord approached the van, opened the passenger door, and requested that Haley step out. As Haley stepped from the vehicle, McCord heard a noise, and looking for its source, saw a semiautomatic pistol lying on the ground. Once Haley was secured, he picked the gun up and noted there was no clip in the gun. He later returned to the area where he observed the gun and found a clip containing at least one bullet.

As these events unfolded, Trooper Oglesby, the other state trooper in the police car with McCord, also focused his attention on the occupants of the van, both of whom he could see clearly. He observed Haley making very busy, furtive movements with his arms and leaning and twisting in his seat while the driver made no movements.

Once Haley and the driver were secured, the officers searched the van and Haley. They found a $100 bill in Haley's pocket that was one of the bills police provided to Graybeal for the purchase. They also found a baggie of marijuana and a baggie of cocaine on Haley. On the floor of the van between the driver and passenger seats (but closer to the passenger seat), the officers found $3900. All of those bills matched the money police had provided to Graybeal for the cocaine purchase that Graybeal gave to Wilder inside the residence for the drugs.

Simultaneously with these events occurring in the driveway, other state officers entered the Wilder residence without a search warrant. This search was the subject of a motion to suppress evidence that the district court granted in part and denied in part. Upon their entry, Graybeal indicated to the officers that the drug transaction had taken place and that the drugs were in his shirt pocket. The officer removed the cocaine from Graybeal's pocket and secured it as evidence.

Haley's only claim on appeal is that the evidence was insufficient to support his jury conviction of using or carrying a firearm during and in relation to a drug trafficking crime and the district court therefore erred in denying his motion for acquittal. A motion for judgment of acquittal will be denied if, viewing the evidence in the light most favorable to the government, there was substantial evidence from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). Construing the testimonies of officers McCord and Oglesby in the light most favorable to the Government, there was sufficient evidence for a reasonable jury to conclude that Haley knowingly carried a gun during the drug delivery at Wilder's residence. Based upon the testimonies of those two officers, the jury drew a reasonable inference that Haley knowingly possessed the gun that McCord heard fall to the ground when Haley exited the van. Thus, we affirm Haley's conviction and sentence.

Wilder first challenges the district court's refusal to sever his trial from Haley's. We review the denial of severance for abuse of discretion. *United States v. Montgomery*, 262 F.3d 233, 244 (4th Cir. 2001). It is not an abuse of discretion to follow the general rule that defendants who are indicted together should be tried together unless the moving defendant is able to show prejudice. *United States v. Strickland*, 245 F.3d 368, 384 (4th Cir. 2001) (citation omitted).

Wilder and Haley were named together in three counts of a four-count indictment for their participation in the same drug transactions. Therefore, joining them together for trial was appropriate under Fed. R. Crim. P. 8(b). In addition, denial of relief from joinder was appropriate under Fed. R. Crim. P. 14 because Wilder fails to demonstrate prejudice. Even though Haley pled guilty to three of four counts of his indictment, he did not testify at the joint trial and there was no

emphasis placed on his guilty plea at trial. For these reasons, the district court did not abuse its discretion in denying severance.

Wilder next contests the denial of his motion to suppress evidence. In reviewing a district court's decision on a motion to suppress evidence, this Court reviews the district court's legal conclusions de novo and the factual conclusions under a clearly erroneous standard. *United States v. Rusher*, 966 F.2d 868, 873 (4th Cir. 1992) (citation omitted). The district court suppressed most of the evidence that officers obtained during the warrantless search of Wilder's home. The court did not suppress, however, cocaine that Graybeal testified that he purchased from Wilder in the home. In declining to suppress this evidence, the district court stated:

> The court finds [the cocaine] admissible inasmuch as the cocaine that was received by the confidential informant inside the Wilder house on March 28, 2002, was in his possession, that is the CI's possession at the time of the unlawful entry by the officers. The cocaine that was in the possession of the CI would under the circumstances inevitably have been received by the authorities with or without the unlawful entry. And beyond that, at that time, even though the CI was in the Wilder home, the CI was there as an invitee of the defendant Wilder who had surrendered possession of the cocaine to the CI and as a consequence of which the defendant Wilder no longer had any privacy interest to be preserved in that cocaine.

(JA 665-67). Graybeal was working as a confidential informant for the Government when he received cocaine from Wilder and would have turned the cocaine over to the police whether Wilder's home was searched or not—just as he had done after the previous controlled buy. Therefore, the district court properly denied suppression of this evidence for two reasons. First, a preponderance of the evidence establishes that the cocaine "inevitably would have been discovered by lawful means." *See Nix v. Williams*, 467 U.S. 431, 444 (1984). Second, Wilder had already given the cocaine to Graybeal, so he no longer had any privacy interest in it. *See Rakas v. Illinois*, 439 U.S. 128, 138-40 (1978).

Wilder next alleges that Count One of his indictment that charged him with conspiracy was "over broad" and deprived him of his constitutional right to testify in his own defense. This Court reviews such challenges to an indictment that were asserted before trial de novo. *United States v. Loayza*, 107 F.3d 257, 260 (4th Cir. 1997).

Wilder asserts that Count One of his indictment unduly prejudiced him because it "'lump[ed] together' . . . two or three distinct conspiracies." Whether the Government has proven one single conspiracy or multiple smaller conspiracies is a question of fact that is left to the jury. *See United States v. Roberts*, 262 F.3d 286, 294 (4th Cir. 2001), *cert. denied*, 535 U.S. 991 (2002). If the conspiracy "had the same objective, it had the same goal, the same nature, the same geographic spread, the same results, and the same product," it can be a single conspiracy if it involved multiple transactions. *See United States v. Crockett*, 813 F.2d 1310, 1317 (4th Cir. 1987).

Count One of Wilder's indictment stated:

> From in or about January, 1997, to on or about March 28, 2002, at or near Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia and elsewhere, defendants JULIUS WILDER, GEORGE HALEY, also known as "George Scott," and other persons whose identities are both known and unknown to the Grand Jury, knowingly conspired to commit offenses in violation of 21 U.S.C. § 841(a)(1), that it, knowingly and intentionally to distribute cocaine, also known as "coke," a Schedule II controlled substance.

(JA Vol. I at 24). Evidence presented at trial fully supported this count of the indictment. Moreover, Count One of the indictment did not have any effect on Wilder's capacity to testify on his own behalf if he chose to do so.

For these reasons, we affirm Wilder's jury convictions and sentence. We dispense with oral argument because the facts and legal contentions of the parties are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*