**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                       No. 98-4656

DOMINGO NOLBERTO PENA,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                       No. 98-4710

RONTHANY LEO WARD,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                       No. 98-4764

LAMONT HAROLD GARRISON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                       No. 98-4779

LAWRENCE BERNARD GARRISON,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CR-98-132-A)

Argued: March 3, 2000

Decided: April 27, 2000

Before LUTTIG and TRAXLER, Circuit Judges, and
Jackson L. KISER, Senior United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Gregory Bruce English, ENGLISH & SMITH, Alexan-
dria, Virginia, for Appellant Pena; Christopher Dean Latsios, Fairfax,
Virginia, for Appellant Ward; Sharon Styles-Anderson, Washington,
D.C., for Appellant Lamont Garrison; Charles Frederick Daum,
Arlington, Virginia, for Appellant Lawrence Garrison. James L.
Trump, Assistant United States Attorney, Morris Rudolph Parker, Jr.,
Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON
BRIEF:** Helen F. Fahey, United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

2

**OPINION**

PER CURIAM:

Domingo Nolberto Pena, Ronthany Leo Ward, Lamont Harold Garrison, and Lawrence Bernard Garrison appeal their convictions and sentences for conspiracy to distribute cocaine and crack cocaine. See 21 U.S.C.A. § 846 (West 1999). Pena also appeals an additional conviction for possession with intent to distribute crack cocaine. See 21 U.S.C.A. § 841(a)(1) (West 1999). We affirm.

I.

The facts, viewed in the light most favorable to the Government as we must following conviction, see Glasser v. United States, 315 U.S. 60, 80 (1942), are as follows. Appellants, along with eleven others, were named in a multi-count indictment arising out of their association with an extensive cocaine and cocaine base ("crack") distribution organization operating in Virginia, Maryland, and Washington, D.C. In early 1995, Samuel Suero and Felix Ogando were distributing cocaine in the New York City area, which they were obtaining from other Dominican traffickers in the city, including Humberto Fransisco Sanchez-Peralta and Richard Orozco-Oviedo.[1] In order to locate additional cocaine and crack customers, Suero contacted his cousin and former drug distribution associate, Edwin Rodriquez, who had resumed his drug distribution activities shortly after his release from federal prison in 1993. This prompted a meeting between Suero, Ogando, Edwin Rodriquez, and Edwin's brother, Bernardo Rodriquez, in Washington D.C. to discuss expanding their trafficking activities into Washington D.C. and Virginia.[2] After the meeting,

_____

[1] Sanchez-Peralta and Orozco-Oviedo were indicted along with appellants in this case. At the time of the trial, Orozco-Oviedo had pled guilty to conspiracy to distribute cocaine and Sanchez-Peralta was a fugitive.
[2] Samuel Suero, Bernardo Rodriguez, Edwin Rodriguez, and Lamont Crumity had all been indicted in 1990 on drug conspiracy charges. Edwin Rodriquez and Lamont Crumity were both convicted. Edwin Rodriquez was released from prison in 1993, and Crumity was released in early 1995. Suero had fled to his home in the Dominican Republic to escape arrest, but returned to the United States in 1991 to resume his drug distribution activities. Bernardo Rodriguez was not arrested until August 1996.

Edwin Rodriguez began to distribute cocaine and crack for Suero and Ogando. This included supplying the drugs to Lamont Crumity and Tito Abea. The cocaine was packaged in balls surrounded with black tape. Normally, Ogando transported the drugs from New York to the other areas.

Crumity, in turn, supplied crack to Ronthany "Ronnie" Ward, who had been his prior customer, as well as to Ronnie Green and Raynell DeCamp. In the late summer of 1995, Rodriquez and Suero were stopped by the New Jersey State Police and found to be carrying a large sum of money. Rodriguez was incarcerated for violating his parole, prompting Suero and Ogando to begin directly distributing to Crumity and Abea. Likewise, when Crumity was arrested in November 1996, Suero and Ogando began to distribute directly to Ward. In early February 1997, Ward sold crack cocaine to an informant and, several days later, to the informant and an undercover officer. The second deal was videotaped.

In the summer of 1996, Suero and Ogando also began to supply Domingo Pena with crack cocaine. Pena had been previously supplied by Johnny Clarke, who had been supplied by Suero and Ogando until they cut him off for unpaid debts. The crack cocaine delivered to Pena was also packaged in balls surrounded by black tape. And cocaine purchased in a controlled buy from Pena by the Arlington County Police in August 1996 was similarly packaged in black tape.

Like Crumity, Tito Abea also had customers to whom he distributed. They included co-defendants Frederick Bush, Jackie Moore, and Jose Contreras. In August 1996, Tito Abea and his brother Pedro Abea opened P & T Auto Body Shop in Maryland and Tito Abea began to distribute cocaine from the shop to twin brothers Lamont and Lawrence Garrison. On one occasion in January 1997, Ogando directly distributed cocaine to Lamont and Lawrence Garrison at Tito Abea's request. In addition to the testimony of Tito Abea and Felix Ogando concerning these drug transactions, Pedro Abea testified that he observed Tito Abea engaging in drug deals with the Garrisons at the shop, and that he also saw Ogando deliver black balls of cocaine to the Garrisons at the shop. In January 1997, Ogando was arrested in possession of four packages of cocaine wrapped in black tape. Tito Abea testified that the Garrisons paged him on the evening of Ogan-

4

do's arrest. When he returned the call, Abea testified that Lamont Garrison said that he and Lawrence had seen the police stop Ogando and Pedro Abea in Abea's automobile, and that the black balls of cocaine had been placed on the top of the automobile. Law enforcement officers confirmed that black balls had been placed on the hood of the Abea automobile and that Lamont Garrison's automobile was seen driving by the scene during the arrest.

Following a jury trial, appellants were each convicted of conspiracy to distribute cocaine and crack cocaine. See 21 U.S.C.A. § 846. Pena was also convicted of an additional charge of possession with intent to distribute crack cocaine. See 21 U.S.C.A. § 841(a)(1). Pena was sentenced to 292 months imprisonment. Ward was sentenced to 248 months imprisonment. Lamont Garrison was sentenced to 235 months imprisonment, and Lawrence Garrison was sentenced to 188 months imprisonment. All appellants were additionally sentenced to a five-year term of supervised release, plus a special assessment. They appeal their convictions and sentences on numerous grounds.

II.

We first address appellants' various challenges to their convictions. For the reasons enunciated below, we find no reversible error and affirm.

A.

Appellants' first challenge is to the district court's refusal to give a requested jury instruction on the credibility of cooperating government witnesses. We review the district court's failure to give the requested instruction for an abuse of discretion. See United States v. Ruhe, 191 F.3d 376, 384 (4th Cir. 1999). A refusal to grant a requested instruction is reversible error only if the instruction "(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." United States v. Lewis, 53 F.3d 29, 32 (4th Cir. 1995) (internal quotation marks omitted).

5

Appellants' proposed instruction sought to remind the jury that the co-conspirator witnesses had entered into plea agreements with the government, and that under the agreements they were cooperating in the government's investigation in the hope that the government would persuade the district court to either impose a more lenient sentence upon them or reduce a sentence that had already been imposed upon them. The requested instruction went on to state that the testimony "must be examined and weighed by the jury with greater care than the testimony of a witness who has not testified pursuant to a cooperation agreement." J.A. 553.

In the instructions actually given by the district court, the jury was advised that they were the sole judges of credibility, that they were to scrutinize carefully "the circumstances under which each witness has testified," and that they should "consider any relation each witness may bear to either side of the case." J.A. 1281. The jury was also specifically reminded that some of the government's witnesses had reached plea agreements with the government and that the jury "should consider whether the witnesses who fit that circumstance are testifying falsely and in order to obtain favorable consideration from the government or some other disposition in their own case." J.A. 1286; cf. United States v. Herrera, 832 F.2d 833, 836 (4th Cir. 1987) (noting with approval the district court's "caution[] [to] the jury that plea agreements often give government witnesses a motive to testify falsely and that the jury should weigh such testimony carefully.").

We conclude that the district court did not abuse its discretion in rejecting the appellants' proposed instruction on the credibility of cooperating witnesses. The substance of the proposed instruction was "substantially covered by the court's charge to the jury" and the district court's mere failure to word it in the manner suggested by appellants in no way impaired their ability to conduct their defense. Lewis, 53 F.3d at 32.

B.

All appellants next challenge the district court's decision to admit into evidence a photographic chart depicting twenty-two purported participants in the conspiracy, including the appellants and their eleven co-defendants. A district court's decision to allow the use of

6

"summary charts `will not be overturned on appeal unless [the] decision is shown to be arbitrary or irrational.'" United States v. Loayza, 107 F.3d 257, 264 (4th Cir. 1997) (quoting United States v. Johnson, 54 F.3d 1150, 1156 (4th Cir. 1995)).

It is well-established that a district court may admit summary testimony and summary charts, under Rule 611(a) of the Federal Rules of Evidence, if they will help the jury to better understand the evidence presented and to ascertain the truth. See Johnson, 54 F.3d at 1159. In making this determination, "the length of the trial, the complexity of the case, and the accompanying confusion that a large number of witnesses and exhibits may generate for the jury" is considered. Id. at 1159; see Loayza, 107 F.3d at 264. The possible prejudice to the defendant by allowing the summary chart into evidence must also be considered. See Johnson, 54 F.3d at 1159. However, any such "prejudice may be dispelled by giving the defendant an opportunity to cross-examine the individual who prepared the chart. In addition, a cautionary jury instruction may be requested and given." Loayza, 107 F.3d at 264 (internal citation omitted).

The photographic chart objected to by the appellants was introduced by the government during its direct examination of an investigating FBI officer. The chart consisted of no information beyond the photographs of the twenty-two alleged participants in the drug organization, including appellants, with their names printed underneath. These persons were referred to frequently throughout the trial and the accuracy of the photographs, to which witnesses had testified, was not questioned. Rather, appellants took issue with the manner in which the photographs were arranged on the chart. Specifically, while the chart contained no explicit ranking information, the photographs were grouped according to the allegations in the indictment and the testimony presented at trial. For example, Orozco-Oviedo and Sanchez-Peralta were at the top of the exhibit, followed underneath by Suero and Ogando, followed underneath by Lamont Crumity, Domingo Pena, Edwin Rodriguez, and Tito Abea. These men, in turn, were each grouped with the persons to whom they supplied cocaine and crack cocaine.

The district court overruled appellants' objection to the admission of the chart, noting that the jury would likely have difficulty keeping

7

up with the large number of witnesses, parties, and other co-conspirators and, therefore, that the chart would aid the jury in the decisional process. See Johnson, 54 F.3d at 1160 ("In light of the complex nature of the extended drug conspiracy and the large number of witnesses presented, we conclude that the summary chart likely helped the jury in sifting through the testimony in the case."). The arrangement itself was consistent with the trial testimony, including that of Orozco-Oviedo, Suero, Ogando, Edwin Rodriguez, Abea, Crumity, and seven additional co-conspirators. And these witnesses, along with the FBI and Task Force case agents, were all available for cross-examination by defense counsel.

Appellants nevertheless assert that admission of the chart was prejudicial and that, despite the opportunities for cross-examination, the district court abused its discretion in admitting the chart into evidence without giving a specific limiting instruction. They admit that they requested no such instruction once the district court ruled that the chart was admissible, but assert that it was the judge's duty, and not their own, to ensure that the jury was so instructed. We disagree. The propriety of cautionary instructions is one safeguard that may be employed to minimize the prejudicial effect of a summary chart, see Loayza, 107 F.3d at 264; Johnson, 54 F.3d at 1160-61, but we have never held it to be the sole or determining factor. We decline to do so today, particularly in a case, such as this, where the summary chart and the testimony introducing it presented very little in the way of information and defense counsel may well have made the strategic decision not to request a limiting instruction. See Loayza, 107 F.3d at 264 ("[A] cautionary jury instruction may be requested and given.") (emphasis added). Accordingly, we find no abuse of discretion in the district court's decision to allow the photographic chart into evidence.

C.

Appellants Pena, Ward, and Lawrence Garrison contend that the district court should have granted their motion for a mistrial because the prosecutor indirectly commented on their failure to testify. To determine whether the prosecution has, through an indirect remark, improperly commented on an accused's failure to testify in violation of the Fifth Amendment, we apply the following test:"Was the language used manifestly intended to be, or was it of such character that

8

the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" United States v. Anderson, 481 F.2d 685, 701 (4th Cir. 1973) (internal quotation marks omitted), aff'd, 417 U.S. 211 (1974).

In reply to attacks upon the credibility of the co-conspirators who testified for the government during the closing arguments of defense counsel, the prosecutor responded that these attacks were motivated by the knowledge that if the jury believed the co-conspirators, "the defendants are guilty as charged . . . [b]ecause there's no evidence to the contrary." J.A. 1251. The district court denied the appellants' ensuing motion for a mistrial, but gave a curative instruction.

Because we have previously rejected similar challenges to a prose-cutor's reference to the "uncontradicted" nature of certain evidence or testimony, we affirm the district court's denial of the appellants' motion for a mistrial. See United States v. Francis, 82 F.3d 77, 78 (4th Cir. 1996) (government's statement during closing that "[t]he evidence is uncontradicted" was not an improper comment on the accused's failure to testify); United States v. Percy, 765 F.2d 1199, 1204-05 (4th Cir. 1985) (statement that testimony was "unrefuted and unrebutted" was not an improper comment on the accused's failure to testify); United States v. Jenkins, 544 F.2d 180, 180-81 (4th Cir. 1976) (read in context, a statement that testimony was "uncontra-dicted" was not "`manifestly intended to be,[nor] was it of such char-acter that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'") (quoting Ander-son, 481 F.2d at 701). We see little difference between a prosecutor's statement that evidence is "uncontradicted" or"unrefuted and unre-butted" and a prosecutor's statement that there was "no evidence to the contrary." Indeed, appellants acknowledge our prior precedents, but assert, in reliance upon our opinion in Jenkins, that such com-ments do rise to the level of an improper comment on the failure of an accused to testify if the defendant is the only person who could have refuted or rebutted the prosecution's evidence. We, however, rejected a nearly identical argument in Francis :

> While in Jenkins we did suggest that a prosecutorial refer-
> ence to "uncontradicted" evidence in circumstances where
> the only person who could possibly contradict the testimony

9

was the nontestifying defendant "might well" implicate the right against self-incrimination, this suggestion was only <u>dictum</u>. And, at that, the <u>dictum</u> was foreclosed by our holding in the case.

<u>Francis</u>, 82 F.3d at 79 (internal citation omitted). Examining the statement in the context in which it was made, as we must, we are satisfied that the prosecutor's statement that there was "no evidence to the contrary," J.A. 1251, was not "manifestly intended to be, or . . . of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." <u>Anderson</u>, 481 F.2d at 701. Therefore, the district court did not err in denying appellants' motion for a mistrial.

D.

Next, Ward appeals the district court's decision to allow Lamont Crumity to testify about Ward's participation in the distribution of crack cocaine prior to the charged date of the conspiracy and to allow a law enforcement officer to testify about various incriminating items seized from Ward's apartment during the execution of a search warrant in July 1997. Although seemingly acknowledging that the evidence had at least some probative value, Ward asserts that it was not admissible under Rule 404(b) of the Federal Rules of Evidence and, further, that any probative value was outweighed by its prejudicial effect and should have been excluded under Rule 403 of the Federal Rules of Evidence. We review the district court's decision to admit the evidence under the narrow abuse of discretion standard. <u>See</u> <u>United States v. Grimmond</u>, 137 F.3d 823, 831 (4th Cir.), <u>cert. denied</u>, 525 U.S. 850 (1998); <u>United States v. Queen</u>, 132 F.3d 991, 993 (4th Cir. 1997), <u>cert. denied</u>, 523 U.S. 1101 (1998). Such decisions will not be reversed unless they are "arbitrary or irrational." <u>United States v. Powers</u>, 59 F.3d 1460, 1464 (4th Cir. 1995) (internal quotation marks omitted).

Ward's first challenge pertains to the testimony of Lamont Crumity. Crumity testified that he engaged in repeated drug transactions with Ward from approximately July 1995 until Crumity's arrest in November 1996, a period which was encompassed within the time frame of the indictment. Additionally, Crumity testified that he and

10

Ward had engaged in drug transactions on a regular basis from 1987 to October 1990, and that Ward was also distributing crack cocaine during this time period. Ward appeals the district court's decision to allow Crumity to testify regarding transactions which preceded the time frame of the indictment, primarily because Crumity had been previously convicted and was a co-conspirator with a motive to lie about Ward's involvement.

Ward's second challenge is to the district court's decision to allow an investigating law enforcement officer to testify that, during a search of Ward's apartment in July 1997, officers found weapons, including a loaded 9 mm firearm by the front door, ammunition, shoulder holsters for weapons, cash, a scale, plastic zip-lock bags containing heroin, and marijuana. Ward asserts that this evidence was particularly prejudicial because it was preceded by the testimony of an undercover officer who testified that two controlled purchases of crack cocaine were made from Ward in February 1997.

We find no error in the district court's admission of this evidence. First, "evidence of uncharged conduct is not considered `other crimes' evidence if it arose out of the same . . . series of transactions as the charged offense, . . . or if it is necessary to complete the story of the crime (on) trial." United States v. Kennedy , 32 F.3d 876, 885 (4th Cir. 1994) (internal quotation marks omitted). And "[i]t is well-established . . . that the mere fact that the evidence involved activities occurring before the charged time frame of the conspiracy does not automatically transform that evidence into `other crimes' evidence." Id.

In this circumstance, the previous drug distribution activities between Crumity and Ward provided the context for the charged conspiracy by revealing important background information about Ward and explaining how Ward and Crumity came to be engaged in distribution activities during the time frame of the indictment. The items recovered during the search of Ward's residence, although recovered after the last alleged overt act specified in the indictment, were recovered within the time frame of the charged conspiracy. And the items located -- guns, ammunition, shoulder holsters, cash, scales, and drugs -- were all well-recognized tools of the drug distribution trade, see generally United States v. Gastiaburo, 16 F.3d 582, 588 (4th Cir. 1994) (upholding admission of expert testimony that beepers and

11

address books are commonly used by drug traffickers); <u>United States v. Barth</u>, 990 F.2d 422, 425 (8th Cir. 1993) (noting that pagers are tools of the drug trade); <u>United States v. Ricks</u>, 882 F.2d 885, 892 (4th Cir. 1989) (upholding admission of evidence of firearms at drug conspiracy trial under Rule 404(b)), and "inextricably intertwined" with Ward's participation in the ongoing drug distribution business. <u>United States v. Chin</u>, 83 F.3d 83, 88 (4th Cir. 1996) (internal quotation marks omitted).

Second, even were the evidence only admissible under Rule 404(b), such other crimes, wrongs, or acts are "generally admissible except when . . . offered to prove `the character of a person in order to show action in conformity therewith.'" <u>Queen</u>, 132 F.3d at 994 (quoting Fed. R. Evid. 404(b)). "[W]ith only the one stated exception, [Rule 404(b)] is understood to be a rule of inclusion, authorizing evidence of prior acts for purposes other than character, such as `motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" <u>Id.</u> (internal citations omitted). By pleading not guilty, Ward denied that he was a participant in the drug distribution conspiracy. Thus, Ward's involvement in drug transactions prior to the dates of the charged conspiracy, and the presence of guns, scales, and other tools of the drug trade in his apartment during the time frame of the charged conspiracy, were facts relevant to the issues of Ward's knowledge and intent, providing an indication that he was both aware of and participating in the conspiracy and intent upon protecting its operations. <u>See United States v. Sanchez</u>, 118 F.3d 192, 195-96 (4th Cir. 1997) (evidence that defendant had conducted drug deals outside the time frame charged in the conspiracy and that he was arrested near an automobile which contained drugs and in which he had just been a passenger was properly admitted under Rules 404(b) and 403); <u>United States v. McMillon</u>, 14 F.3d 948, 955 (4th Cir. 1994) (evidence which "explain[ed] to the jury how the illegal relationship between participants in the crime developed" was admissible under Rules 404(b) and 403) (internal quotation marks omitted).

Having concluded that the evidence was admissible, we must still address Ward's contention that its probative value was "substantially outweighed by the danger of unfair prejudice" and, therefore, that it should have been excluded under Federal Rule of Evidence 403. For the reasons previously indicated, the challenged evidence was

12

strongly probative of Ward's participation in the criminal conspiracy for which he was charged. It was, of course, also prejudicial, as is all such inculpatory evidence. See Sanchez, 118 F.3d at 196. But having reviewed the record, we cannot say that the district court abused its discretion in determining that the probative value of the evidence was not substantially outweighed by its prejudicial effect.

E.

Lamont Garrison and Lawrence Garrison appeal the district court's denial of their motion to sever their trial from that of their co-defendants. They, joined by Ward, first contend that their cases were misjoined under Rule 8(b) of the Federal Rules of Criminal Proce-dure. In the alternative, the Garrisons contend that the joint trial was unduly prejudicial and should have been severed from that of Ward and Pena under Rule 14 of the Federal Rules of Criminal Procedure. The district court's decision to deny a motion for severance will not be overturned absent an abuse of discretion. See United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995).

1.

Under Rule 8(b) of the Federal Rules of Criminal Procedure, "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." In such cases, the "defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count." Fed. R. Crim. P. 8(b).

We disagree with the appellants' assertion that the government failed to present a sufficient link between the Garrisons, Ward, and Pena for the purposes of joinder under this Rule. Lamont Garrison, Lawrence Garrison, Ward, and Pena, together with eleven additional co-conspirators, were indicted for their participation in a criminal conspiracy spanning more than a three-year period. The evidence overwhelmingly confirmed that all defendants named in the indict-ment participated at some level in the single conspiracy. Samuel Suero and Felix Ogando, who were located in New York, obtained cocaine from Dominican suppliers. These drugs were, in turn, either

13

sold or fronted to the other members of the conspiracy. With regard to appellants, the evidence revealed that Suero and Ogando furnished drugs to Pena; to Tito Abea, who in turn supplied the Garrisons; to the Garrisons directly on one occasion; to Lamont Crumity, who in turn supplied Ward; and to Ward directly after Crumity was arrested. The commonality of the drug distribution organization was also revealed by testimony that the drugs being distributed were consistently packaged in balls surrounded by black tape. Thus, we are satisfied that Lamont Garrison, Lawrence Garrison, Ward, and Pena were appropriately indicted together under Rule 8(b) of the Federal Rules of Criminal Procedure.

2.

The Garrisons next assert that, even if they were properly indicted with the other co-conspirators, the district court erred in denying their motion to sever under Rule 14 of the Federal Rules of Criminal Procedure due to the prejudicial effect of evidence admitted against the others. We disagree.

Under Rule 14, the district court may grant a severance if "[i]t appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together." Fed. Rule Crim. P. 14. In asserting that the district court should have allowed them a separate trial, the Garrisons urge us to depart from the standard rule "that defendants who are charged in the same criminal conspiracy should be tried together." Reavis, 48 F.3d at 767; see Zafiro v. United States, 506 U.S. 534, 537 (1993); United States v. Brugman , 655 F.2d 540, 542 (4th Cir. 1981). Essentially, they contend that this is because they were substantially prejudiced by the spillover evidence of wrongdoing on the part of Ward and Pena. In particular, they point to the guns and other drug paraphernalia that was seized during the search of Ward's apartment, the videotaped drug transaction between Ward and an undercover officer, and the evidence supporting the conviction against Pena for possession with the intent to distribute crack cocaine in the summer of 1996.

We have previously recognized that "[t]he fact that the evidence against one defendant is stronger than the evidence against other

14

defendants does not in itself justify severance[since], [i]f this were the case, motions to sever [in a conspiracy case] . . . would have to be granted almost as a matter of course." United States v. Brooks, 957 F.2d 1138, 1145 (4th Cir. 1992). Rather, the Garrisons "must establish that prejudice would result from a joint trial . . ., not merely that separate trials would result in a better chance of acquittal." Id. In the instant case, there was more than sufficient evidence to support the Garrisons' convictions and we do not perceive any prejudice to them merely because the quantity of evidence against Ward and Pena may have been greater than that against the Garrisons. Nor do we see any other source of prejudice requiring separate trials. Also, we note that the district court gave a limiting instruction to the jury at the time the physical evidence was introduced, emphasizing that the evidence only pertained to Ward and that, although Pena was convicted of a substantive count in addition to the conspiracy charge, the substantive charge occurred within the time frame and context of the charged conspiracy. Accordingly, we conclude that the district correctly denied the Garrisons' motion for a severance under Rule 14.

F.

Lamont and Lawrence Garrison also challenge the sufficiency of the evidence to support their conspiracy convictions. "If there is substantial evidence to support the [jury's] verdict, after viewing all of the evidence and the inferences therefrom in the light most favorable to the Government," the court must affirm. United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

The crux of the Garrisons' challenge is that the only evidence connecting them to the conspiracy was the testimony of Tito Abea, Pedro Abea, and Felix Ogando -- all of whom were, according to the Garrisons, unreliable witnesses because they testified subject to plea agreements with the government and had a substantial incentive to testify falsely. However, it is well-established that, when reviewing sufficiency of the evidence claims, "we must remain cognizant of the fact that `[t]he jury, not the reviewing court, weighs the credibility of the

15

evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe.'" Id. at 862 (quoting Murphy, 35 F.3d at 148).

Furthermore, while "[t]he settled law of this circuit recognizes that the testimony of a defendant's accomplices, standing alone and uncorroborated, can provide an adequate basis for conviction," United States v. Burns, 990 F.2d 1426, 1439 (4th Cir. 1993), such testimony does not stand alone in this case. Rather, it was corroborated at trial by Tito Abea's cellular telephone records, which revealed frequent calls between Abea's cellular telephone and the Garrison residence and pager. Accordingly, we conclude that the government presented sufficient evidence to support the convictions obtained against both Lamont and Lawrence Garrison.

III.

Lamont and Lawrence Garrison also raise several challenges to the sentences imposed upon them by the district court. First, they jointly challenge the amount of drugs attributed to each for purposes of sentencing. Second, Lamont Garrison individually challenges the district court's imposition of a two-level enhancement for obstruction of justice.

A.

We first address the Garrisons' joint challenge to the amount of drugs attributed to them for purposes of sentencing. The basis for the challenge is their assertion that the trial testimony improperly lumped them together because they are twins and that the district court erred in crediting the testimony of Tito Abea, whom they believe to be an unreliable witness. As a result of these alleged improprieties, the Garrisons assert that the district court failed to make particularized findings to support the drug amounts assigned to them.

When a defendant disputes the amount of drugs for which he is to be held responsible, "the district court must make an independent resolution of the factual issue at sentencing," and the burden is on the

16

government to prove the quantity of drugs by a preponderance of the evidence. United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993). "[T]he credibility of a testifying co-conspirator is for the sentencing judge to assess." United States v. Fisher, 58 F.3d 96, 100 (4th Cir. 1995); see United States v. Sampson, 140 F.3d 585, 591 (4th Cir. 1998) ("In reviewing sentences imposed under the[United States Sentencing] Guidelines, we must give due regard to the opportunity of the district court to judge the credibility of the witnesses.") (internal quotation marks omitted). The district court's factual determinations as to the quantity of drugs properly attributed to a defendant will not be overturned unless clearly erroneous. See Sampson , 140 F.3d at 591.

We conclude that the district court had sufficient evidence upon which to justify the drug quantities attributed to both Lawrence and Lamont Garrison. At sentencing, the district court credited the testimony of Tito Abea, as obviously the jury did during the guilt phase, and adopted the amounts thereby attributed to the Garrisons under their respective presentence reports. Further, according to Abea's testimony, the Garrisons received the drugs together, an observation corroborated by the testimony of Pedro Abea and Felix Ogando. Accordingly, we find no error in the district court's decision to credit Tito Abea's testimony and to equally attribute the drug activity to Lamont and Lawrence Garrison. The fact that the brothers consistently acted as partners is supported by the evidence presented and does nothing to undermine the determination that the amounts attributed to both, while equivalent, were nevertheless properly based upon each brother's individualized conduct.

B.

We next turn to Lamont Garrison's additional contention that the district court erred in enhancing his sentence pursuant to U.S. Sentencing Guidelines Manual § 3C1.1 (1997), for obstructing justice by committing perjury. The district court's determination that Lamont Garrison committed perjury is also a factual determination reviewable for clear error. See United States v. Murray, 65 F.3d 1161, 1165 (4th Cir. 1995).

At trial, Lamont Garrison denied that he had ever received or distributed drugs, and asserted that his frequent presence at the P & T

Auto Body Shop was the result of either the Abeas' automobile repair activities, or those of the shop next door. This testimony, however, was contradicted by the testimony of Tito and Pedro Abea, the testimony of Felix Ogando, and by various records indicating that Lamont Garrison and Tito Abea were in frequent contact by pager and cellular telephone during the relevant time periods. Although Lamont Garrison contends that the district court imposed the two-level enhancement based solely upon the testimony of a government witness who did not testify at trial, the district court's determination that Lamont committed perjury when he testified at trial is supported by the testimony of those witnesses who did testify at trial-- witnesses whom the district court, and presumably the jury, credited. Accordingly, we cannot say that the district court committed clear error in imposing the two-level enhancement for obstruction of justice for perjury.

IV.

The Garrisons' final challenges to their convictions and sentences center on assertions that their respective trial counsel were ineffective for a variety of reasons. Ineffective assistance of counsel claims are not properly raised on direct appeal "unless the record conclusively shows" that defense counsel did not provide effective representation. United States v. King, 119 F.3d 290, 295 (4th Cir. 1997); see United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992). Because the record below fails to conclusively establish counsels' alleged ineffectiveness, we do not reach these claims on direct appeal. The Garrisons may choose to present these claims in a subsequent proceeding under 28 U.S.C.A. § 2255 (West Supp. 1999).

V.

For the foregoing reasons, we affirm the convictions and sentences imposed upon Domingo Nolberto Pena, Ronthany Leo Ward, Lamont Harold Garrison, and Lawrence Bernard Garrison in all respects.

AFFIRMED

18