UNITED STATES of America

v.

Nancy Marie LEDESMA, Defendant.

Criminal No. 08–23–P–S.

United States District Court,
D. Maine.

May 2, 2008.

Craig M. Wolff, U.S. Attorney's Office District Of Maine, Portland, ME, for Plaintiff.

Eric A. Vos, Federal Defender's Office, Portland, ME, for Defendant.

## ORDER ON DETERMINATION OF THE FINANCIAL "LOSS" FOR SENTENCING

GEORGE Z. SINGAL, Chief Judge.

In this case, the Government and Defendant assert that the Court should find that the loss to be $168,183.67, which represents the $151,876.17 ($17,400.03 + $67,367.80 + $67,108.34) that Defendant stole from Mr. Shapell to pay off the fraudulent credit card charges she incurred in Mr. Kaplan's name plus $6,000 she had fraudulently advanced to her and $10,307.50 she stole in another scheme charged in Count II. Probation recommends that the loss be determined to be $315,841.48, which includes the amounts listed above plus $26,785.05 and $120,872.76, which Defendant charged on Mr. Kaplan's credit cards and paid off by Defendant stealing money from Mr. Shapell. In this case, there were two different victims and Defendant had two different methods of fraudulently obtaining a monetary gain.

The sentencing Guidelines provide that levels may be added depending on the amount of loss the victim(s) suffered as a result of Defendant's crimes. *See* § 2B1.1(b)(1). The commentary to the Guidelines relevant to the issue of loss in this case provides that the loss should be the greater of "actual loss" or "intended loss." *Id.* § 2B1.1 cmt. n. 3(A). The Guidelines define "intended loss" as the "(I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as a government sting operation or an insurance fraud in which the claim exceeded the insured value)."

The First Circuit recently clarified that "intended loss" in these circumstances is a term of art meaning the loss the defendant reasonably expected to occur at the time

he perpetrated the fraud. *See United States v. McCoy,* 508 F.3d 74, 79 (1st Cir. 2007)(also remarking that "expected loss" would have been a better term in the Guidelines commentary than "intended loss"). More recently, in *United States v. Innarelli,* 2008 WL 1868418 (Apr. 29, 2008), the First Circuit stated that "[n]otwithstanding the Guidelines commentary's use of the word 'intended,' we focus our loss inquiry for purposes of determining a defendant's offense level on the objectively reasonable expectation of a person in his position at the time he perpetrated the fraud, not on his subjective intentions or hopes." *See id.* at *4. The Court went on to note that:

> it is immaterial that many of the victims actually incurred no loss. *See id.* As the district court aptly stated, "[l]oss in a fraud case is a yardstick for moral culpability." Accord *id.* (intended loss is a "measure for the defendant's culpability"). Where, as here, the defendant reasonably should have expected that loss would result, he can and generally should be punished more severely to account for his greater level of moral culpability, even where the victim has managed to make money in spite of the fraud.

*Id.*

The special rules for "Ponzi and Other Fraudulent Investment Schemes" found in Comment Note 3(F)(iv) are applicable by analogy to this case. Note 3(F)(iv) provides that "in a case involving a fraudulent investment scheme, such as a Ponzi scheme, loss shall not be reduced by the money or the value of the property transferred to any individual investor in the scheme in excess of that investor's principal investment (i.e., the gain to an individual investor in the scheme shall not be used to offset the loss to another individual investor in the scheme)." With respect to Ponzi schemes, the Second, Fourth, Fifth, Seventh and Ninth Circuits have held that the loss calculation in a Ponzi scheme should not be offset by the amount of the victims' recovery. *See United States v. Carrozzella,* 105 F.3d 796, 805 (2d Cir. 1997); *United States v. Loayza,* 107 F.3d 257, 265 (4th Cir.1997); *United States v. Deavours,* 219 F.3d 400 (5th Cir.2000); *United States v. Lauer,* 148 F.3d 766, 768 (7th Cir.1998); *United States v. Munoz,* 233 F.3d 1117, 1125 (9th Cir.2000); *but see United States v. Holiusa,* 13 F.3d 1043, 1046–47 (7th Cir.1994) (holding that intended loss in a Ponzi scheme case did not include amounts ultimately returned to investors). These courts reason that the gravity of the crime should be measured by the entire sum of money that the schemers put at risk through the misappropriation regardless of whether some victims were fortunate enough to recover part of their loss. *Lauer,* 148 F.3d at 768. Because the schemers typically return money to investors to perpetuate the fraud and ensnare new investors, and not to mitigate damages to the current investors, these courts reason that they should be held accountable for all of the funds that are misappropriated. *See Carrozzella,* 105 F.3d at 805.

This approach which holds a defendant responsible for the amount of loss which was intended, not the actual loss ultimately sustained, is appropriate in this case where the payments made on Mr. Kaplan's credit cards was vital to the longevity of the scheme. Thus, on these facts, it does not seem appropriate for the Court to apply a "net loss" approach suggested by the Government and Defendant. Defendant, without question, participated in schemes where a total of $315,841.48 was taken. During the course of the schemes, $163,965.31 was returned to Mr. Kaplan, however, clearly the return of the money was for the purpose of continuing to defraud Mr. Kaplan and Mr. Shapell. On the facts of this case, Defendant did not

**138**

pay off Mr. Kaplan's credit card out of any good faith change of mind or any concern about restoring something to the victims, but merely to perpetrate the schemes. This is evidenced by Defendant's fraudulent $6,000 advance on Mr. Kaplan's MBNA credit card in March of 2006, which ultimately led to the discovery of her schemes. The schemes in this case were designed and executed so that Defendant could continue to steal money from her victims.

Accordingly, the Court FINDS that for sentencing purposes the loss in this case is the "intended loss" of $315,841.48.